# BELLA VISTA CONDOMINIUM ASSOCIATION, INC. *v.* DENNIS BYARS
## (AC 27124)

Flynn, C. J., and Rogers and Stoughton, Js.

Argued January 9—officially released July 3, 2007

*Dennis Byars*, pro se, the appellant (defendant).

*Robert E. Ghent*, for the appellee (plaintiff).

*Opinion*

STOUGHTON, J. The pro se defendant, Dennis Byars, appeals from the judgment of the trial court rendered in favor of the plaintiff, the Bella Vista Condominium Association, Inc., in an action to foreclose a statutory lien for unpaid common expense assessments levied pursuant to the Common Interest Ownership Act (act), General Statutes §§ 47-200 through 47-295. The defendant claims that the court improperly (1) found that the plaintiff's executive board was constituted properly to adopt the budgets of March 5 and December 4, 2003, to charge him common fees pursuant to those budgets and to initiate this foreclosure action, (2) found that he was the owner of the condominium at the time the common fees were due and (3) failed to award him relief pursuant to General Statutes § 47-278. We affirm the judgment of the trial court.

The following facts found by the court are relevant to the defendant's appeal. Byars is the owner of 276 Waterville Street, a unit in a condominium complex in Waterbury, and has been the owner since at least April

4, 2003.[1] The plaintiff is a nonstock Connecticut corporation in good standing and the unit owners' association for the condominium. The common charges for the period from April 4, 2003, were $171 per unit per month. The court found that the common fees for 2003 and 2004 were determined pursuant to budgets validly adopted on March 5 and December 4, 2003, respectively. The defendant admitted that he had not paid any of these charges. At the time that the plaintiff adopted the March 5, 2003 budget, its executive board consisted of three members, one of whom was not a unit owner, though he was a resident. The court did not make a specific finding of the composition of the board when the 2004 budget was adopted on December 4, 2003. There is evidence in the record, however, which suggests that the board consisted of one unit owner, one person who was not a unit owner, and one resident who was the husband of the unit owner on record and whose status as a unit owner, under the statute and the plaintiff's bylaws, is ambiguous. The plaintiff filed a complaint against the defendant, requesting, among other things, foreclosure of its lien on the property on August 28, 2003. After trial, the court found the defendant liable on the debt and ordered a foreclosure by sale of the unit to satisfy the defendant's debt. From this judgment, the defendant appeals.

I

The defendant first claims that the executive board of the plaintiff was not constituted in conformity with General Statutes § 47-243 and its own bylaws and, therefore, that its actions in adopting budgets and instituting this foreclosure were invalid. We disagree.

---

[1] The court found that the defendant purchased the unit from the plaintiff "on or about April 4, 2003 . . . ." It noted that the plaintiff had introduced a certified copy of the deed "from the plaintiff to the defendant dated December 18, 2002, recorded April 4, 2003." Because the specific amount of the debt is not at issue, we need not determine on which date the defendant's liability to pay the common charges commenced.

Statutory construction is a matter of law, and our review thereof is plenary. *Celentano* v. *Oaks Condominium Assn.*, 265 Conn. 579, 588, 830 A.2d 164 (2003). We also conduct plenary review of corporate articles and bylaws. *Weldy* v. *Northbrook Condominium Assn., Inc.*, 279 Conn. 728, 736, 904 A.2d 188 (2006). To the extent that the findings of fact made by the court are challenged, our review is limited to determining whether such findings are clearly erroneous. *Celentano* v. *Oaks Condominium Assn.*, supra, 617.

We have previously noted the clear intention in the act that a unit owners' association should not operate without a budget or without the collection of common assessments. *South End Plaza Assn., Inc.* v. *Johnson*, 62 Conn. App. 462, 467, 767 A.2d 1267, cert. denied, 256 Conn. 922, 774 A.2d 138 (2001). When an association fails to adopt a budget, the court will presume that the association operates pursuant to the last validly adopted budget. Id., 469. Here, the common fee assessment did not change for the relevant years.

The defendant first argues that both the act and the plaintiff's bylaws require that all executive board members be unit owners and that the plaintiff's executive board could not adopt budgets or institute a foreclosure action against him because all of the board members were not unit owners at the relevant times. Section 47-243 provides that the membership of the plaintiff shall consist exclusively of all unit owners. The defendant argues that the executive board is a part of the plaintiff and that therefore its members must all be unit owners.

Executive board membership is governed by General Statutes § 47-245 (f). Section 47-245 (f) provides that only a majority of board members must be unit owners.[2]

---

[2] General Statutes § 47-245 (f) provides in relevant part: "[T]he unit owners shall elect an executive board of at least three members, at least a majority of whom shall be unit owners. . . ."

Section 2.1 of the plaintiff's bylaws, which governs executive board membership, also provides that only a majority of the board must be unit owners.[3]

We conclude that the court properly determined that neither the act nor the plaintiff's bylaws require each executive board member to be a unit owner. Instead, the clear language of both requires that only a *majority* of board members be unit owners. The record shows that the majority of board members were unit owners at the time the 2003 budget was adopted and that its composition did not change until after the plaintiff commenced this action.

The defendant next argues that the plaintiff's bylaws require the executive board to have four members in order to conduct business. He argues that a quorum of four was lacking when the board adopted the budgets for 2003 and 2004 and when it authorized the foreclosure action.

The defendant accurately notes that § 2.1 of the bylaws allows for a four member executive board. Section 2.12, which governs quorum, however, states: "At all meetings of the Executive Board, a majority of the members shall constitute a quorum for the transaction of business." We conclude that the court properly determined that the bylaws require only three members, a majority, of the board to conduct business.[4] Further, in this case there were three members of the board, sufficient to constitute a majority present at the time relevant to the adoption of the budgets and the initiation of the foreclosure action.

[3] Section 2.1 provides in relevant part: "The affairs of the Common Interest Community and the Association shall be governed by an Executive Board consisting of four (4) persons, the majority of whom . . . shall be Unit Owners."

[4] We need not consider whether, in other circumstances, a unit owner might have a right to force a condominium association to hold elections in order to fill an empty board seat.

Finally, we must determine whether the bylaws require a minimum of three unit owners to be numbered among the necessary quorum of three required to conduct business or if two is sufficient. At the time of the adoption of the March 5, 2003 budget, and the decision to commence a foreclosure action against the plaintiff, the board consisted of two unit owners and one nonowner.

To answer this question, we examine the interaction between § 2.1 and § 2.12 of the plaintiff's bylaws. Section 2.1 provides that of the four available seats, one may be filled by someone who is not a unit owner and three by unit owners. Section 2.12 provides that board action requires a majority of board members.

We first consider the statutory scheme under which the bylaws were drafted and the language of the bylaws. See *Weldy* v. *Northbrook Condominium Assn., Inc.*, supra, 279 Conn. 734. Section 47-245 (f); see footnote 2; appears to require a minimum of only two unit owners to conduct business. The plaintiff's bylaws vary somewhat from the statutory language, though, overall, the scheme is quite similar. One variation in the bylaws is that the maximum number of board members is increased from three to four. This increase is authorized by § 45-245 (f) and is explicitly provided for in the bylaws. In contrast, there is no language in the bylaws explicitly providing that a minimum of three unit owners must be present at all times in order to conduct business on such a four person board. Were this the intended meaning, it could have been included easily, and its absence suggests that this was not the intent.

Next, we examine the scheme created by the bylaws. See *Weldy* v. *Northbrook Condominium Assn., Inc.*, supra, 279 Conn. 736. If the bylaws require a minimum of three unit owners to conduct business, assuming that one member is not a unit owner, each of the three unit

owners would have to be present at each board meeting in order to conduct business. The one person who is not a unit owner, in contrast, would never have to be present. There is no indication in the bylaws, however, that the board members who own and do not own units should be treated differently. The provisions refer only to "persons," treating those who own and those who do not own units alike. Instead, the language of the two provisions suggests that the scheme envisioned was that there should be a maximum of four members of the board, only three of whom need to be present in order to conduct business, regardless of their status relative to unit ownership. This takes account of the fact that board membership is not a professional position and that it is often difficult for board members to schedule meetings at a time when every board member is available.

Finally, we consider the policy of the act that a condominium association should not be found to be operating without a budget or ability to collect common fees. See *South End Plaza Assn., Inc.* v. *Johnson*, supra, 62 Conn. App. 467. This policy suggests that, in cases of doubt, ambiguous terms should be interpreted in favor of finding that the condominium association has the authority to levy and collect fees, which includes the ability to collect those fees by resorting to court when other means prove fruitless. We conclude that the bylaws authorize the board to act when two of the three board members, required by § 2.12, are unit owners and one is not an owner.

The court determined that at the time the March 5, 2003 budget was passed, the board consisted of two unit owners and one person who did not own a unit. Further, the record indicates that the composition of the board did not change between the time of the March

5, 2003 budget meeting and the plaintiff's commencement of the action of foreclosure. Therefore, we conclude that there was a quorum present and that those actions of the board were valid.[5]

We note that the executive board that adopted the 2004 budget, on December 4, 2003, may have been improperly constituted, having less than the required minimum number of unit owners. This, however, is of little avail to the defendant. When a budget, apparently adopted, of an association covered by the act fails to be adopted properly, the association is presumed to operate on the previous validly adopted budget. *South End Plaza Assn., Inc.* v. *Johnson,* supra, 62 Conn. App. 469. Moreover, the 2004 budget, like all others, was ratified by the plaintiff at its annual meeting. See *Il Giardino, LLC* v. *Belle Haven Land Co.,* 254 Conn. 502, 530, 757 A.2d 1103 (2000); M. Ford, Connecticut Corporation Law and Practice (2d Ed. 2007) § 5.02, p. 5-10. Thus, even though the budget passed on December 4, 2003, may have been passed irregularly, the defendant was still liable to pay the common fees pursuant to the budget validly adopted on March 5, 2003. Therefore, the defendant's claim as to the 2004 common charges fails.

---

[5] In a motion for summary judgment, the defendant argued that the plaintiff lacked standing to bring this foreclosure action. The court denied the motion. Questions regarding standing implicate the trial court's jurisdiction to hear a case. *LoRicco Towers Condominium Assn.* v. *Pantani,* 90 Conn. App. 43, 48, 876 A.2d 1211, cert. denied, 276 Conn. 925, 888 A.2d 93 (2005). The defendant asserts that the plaintiff did not follow its own internal procedures in commencing the present foreclosure action. He argues that, because of this alleged failure, the plaintiff lacked standing to commence the action, and, therefore, the court lacked jurisdiction to hear the plaintiff's complaint. Neither in his motion nor in his appellate brief does the plaintiff cite any case law supporting his assertion that a condominium association's failure to follow its own internal procedures in commencing a foreclosure action deprives the court of jurisdiction to hear the complaint. Because we determine that the plaintiff did adequately follow its own internal procedures, we need not consider whether its failure to do so would have implicated the court's subject matter jurisdiction.

## II

The defendant also claims that the deed to his premises is invalid, arguing that he, therefore, is not liable to pay the common fees. We disagree.

The defendant's argument appears to be that Dolores Smith, who signed the deed on behalf of the plaintiff, was not a duly authorized officer of the plaintiff at the time of the transaction. The defendant does not cite any case law, statute or provision of the declaration or the bylaws requiring that the plaintiff's representative at a unit sale be a valid board member. The court found that the defendant received the benefits of the services provided by the plaintiff. The defendant admits that he was represented by counsel at the time he purchased the unit. The court found that the deed was signed by Smith as the duly authorized secretary of the plaintiff on December 18, 2002. The record contains an affidavit from Smith stating that she was the secretary on that date. The court found that she was a validly elected officer of the plaintiff on that date, and this is supported by the record.

Even if there were some technical defect in Smith's position as secretary at the time of the sale, general rules of agency law provide that "[t]he other party to a contract made by an agent for a disclosed . . . principal, acting within his . . . apparent authority . . . is liable to the principal . . . ." Restatement (Second) Agency § 292, p. 19 (1958). An agent has apparent authority to represent the principal when "a principal through his own acts or inadvertences, causes or allows third persons to believe his agent possesses" such authority. (Internal quotation marks omitted.) *Tomlinson* v. *Board of Education*, 226 Conn. 704, 734, 629 A.2d 333 (1993).

The defendant here was represented by counsel at the time he signed the deed and has subsequently

enjoyed the benefits of condominium ownership. The defendant has waived his ability to challenge Smith's validity as agent of the plaintiff. We conclude that the defendant was the owner of the unit for purposes of common fee liability during the relevant periods.

### III

Finally, the defendant claims that the court erred in denying him any relief pursuant to § 47-278. We are not persuaded.

Section 47-278 provides a cause of action against the declarant or others who are subject to the provisions of the act when such parties violate the terms of either the act or the particular association's declaration or bylaws.[6] See *Grey* v. *Coastal States Holding Co.*, 22 Conn. App. 497, 505, 578 A.2d 1080, cert. denied, 216 Conn. 817, 580 A.2d 57 (1990). The defendant has not raised a counterclaim invoking the provisions of § 47-278 but, rather, relies on the statute as a defense to paying the common charges assessed against him. The defendant does not appear to have raised the applicability, if any, of § 47-278 before the trial court. Additionally, the defendant cites no case law or makes any argument in his appellate brief as to how this section excuses him from paying the common charges. See *Mullen & Mahon, Inc.* v. *Mobilmed Support Services, LLC*, 62 Conn. App. 1, 10, 773 A.2d 952 (2001). Instead, the defendant merely recites the errors that he alleges the plaintiff made while drafting the budget and selling him the unit, as described previously. Despite our solicitude of the rights of pro se parties,[7] we conclude that the

---

[6] General Statutes § 47-278 (a) provides in relevant part: "If a declarant or any other person subject to this chapter fails to comply with any of its provisions or any provision of the declaration or bylaws, any person or class of persons adversely affected by the failure to comply has a claim for appropriate relief. . . ."

[7] We have stated frequently that we are aware of the difficulties faced by pro se parties and are solicitous of their rights. Although we have construed the rules of practice liberally for pro se litigants, as long as that does not interfere with the rights of other parties, we cannot ignore the statutes

defendant neither preserved this claim at trial nor supplied us with a sufficient basis from which to review the claim, and so we do not reach it.

The judgment is affirmed and the case is remanded for the purpose of setting a new sale date.

In this opinion the other judges concurred.

and rules of practice. *Rosato* v. *Rosato*, 53 Conn. App. 387, 390, 731 A.2d 323 (1999).